May it please the court. Good morning, your honors. My name is Bill Sullivan. I represent the appellant Rolando Lemus. With the court's permission, I would like to reserve five minutes for rebuttal, if that's okay. Okay, if you'll just keep track of your time, we'll try to help you and remind you of that. But we do watch the time carefully. I heard your sticklers, so I'll try to do the best I can. Very good. Thank you. Before I split into the three separate issues we're dealing with today, I do believe it's important to stress some common facts and law. As your honors I'm sure understand, within this case, and within specifically Plaintiff's complaint, we're dealing with allegations of violations of California law. And I do believe it's important for your honors to understand that California law, and specifically the labor code, is specifically enacted to protect the employees. And there's a reason for that. In addition to protecting the employees themselves, the California legislature feels that it will ultimately protect the society at large. There will not be unemployed or disadvantaged employees who are causing a burden on society. Aren't we really dealing with, all you say is true, I appreciate that, but aren't we dealing with the issue of whether OSHA preempts some portion of the relevant California law? We are, your honor, and that is one of the three issues. And I believe it's fair, I think everybody would agree, that's probably the preeminent issue. For purposes of clarity, we see maybe the crux of the battle in the first two issues. The coercion claim I'm happy to discuss, but we're anticipating, your honors, we'll have more questions on the first two issues. Yes, your honor, we are dealing with whether... Let me just ask you this on the coercion. How should we define coercion? Should we go to a dictionary? Should we use just common sense? What are we doing? We, in our papers, plaintiff's papers, we looked at the legislative intent, the reason for why the section 450 exists, but I think not only the district court, but my office, and I believe every single case we've looked at goes to dictionary. I think that's something that's proper, your honor. Okay, thank you. Turning to your first question, your honor, in terms of the preemption issue, it is that. Does OSHA preempt labor code section 2802? One of the issues we had with the district court is we felt we were, plaintiff was somewhat hamstrung in that there is no clear delineation as to how preemption exists. There is case law saying that OSHA does not expressly preempt the labor code, and specifically 2802. Which cases are you referring to? The Gade case, which is referred to specifically by Denny's, makes reference to the fact that OSHA does not intend to expressly preempt any state laws, including other health and safety laws. Both parties agree that this is not protective equipment, right? That's agreed, your honor, and if I may preface, I want to. I think it would just be under your numbers mixed up, but the 2802. Why isn't this just simply a 2802 question? Plaintiff's position is that it is. Plaintiff's position, and just a brief clarity, I have great respect for counsel for Denny's. We litigate them all the time, their firm and their individuals. I don't like casting aspersions at all. One of the reasons I'm addressing it in this way is we believe for the first time in Denny's reply to our appellate papers, there's an attempt to reverse its prior position and reverse what was discussed by the court. We believe the district court order is clear. The order specifically states three different times these are not PPEs. So, your honor, I do believe that the better question is, removing FEDOSHA from this, is this something that's covered under 2802, and it's clear that it is. To what degree are we bound, or better said, what standard of review should we apply to a determination of the district court that these are not PPEs? I believe, your honor, that, and again, not casting no aspersions, you take what was presented to the court, what the court's finding is, and then you are free, of course, to take it as, in essence, de novo. We are dealing with a successful motion for summary judgment. But again, the only evidence presented, and that's probably most importantly in the declaration of Denny's person most knowledgeable with respect to OSHA requirements, stated, I believe, at paragraph 7 that Denny's itself does not find these items to be PPE. They're clearly not. Absent a new trial in front of the three of you, I think, respectfully, you're bound by that declaration, that undisputed testimony, and to some lesser extent the finding of the district court. Well, if I could return to the 2802 argument, it seems to me that the only way a state may enact laws to regulate areas covered by OSHA is through a state plan exception to the OSHA preemption described in the statute. So 29 U.S.C. 667. They've clearly established a federal standard. Cal OSHA has not chosen to displace that standard, in my view. I guess I didn't see that you had even argued that 2802 was enacted as a part of a plan. We do, Your Honor. Where? I believe, and if I may, and please feel free to interrupt if I'm not directly answering your question, I believe what Your Honor is proceeding on is that 2802 is a health and safety statute, and it's not. It's a wage protection statute. OSHA, fed OSHA, has an absolute right to protect everything that is deemed health and safety, but they do so by and through the designation of PPEs, and here they have not. They specifically have not. One important issue that I think was- Well, I guess I have to understand exactly what you're saying. It seems to me that the Supreme Court was pretty clear in Gade that OSHA preempts or precludes, if you will, any state regulation of a safety or health issue, and all you're saying in this isn't one? No, Your Honor. What I'm saying is OSHA has that right, and if I may, to back up, Gade does say that fed OSHA does not expressly exempt anything. There's no express exemption, and that's where we saw the district court was leaning, although they did not expressly state as such. However, that argument is defeated by the fact that fed OSHA is limited to what it deems to be protected equipment. To that point, though, the Occupational Safety and Health Administration, and I'm going to quote CPL 0201050, we called it Enforcement Guidance for Personal Protective Equipment in General Industry, indicates that, in quotes, the employer is not required to pay for non-specialty shoes that offer some slip-resistant characteristics but are otherwise ordinary clothing in nature. That's right. Isn't that a federal policy directive that has some impact on this? No, Your Honor. The reason being, and I'm glad you asked that question. I'm glad. Well, I think it's something because I'm just watching my clock maybe a little bit too much. The reason for that, and if you take a look at the case on that, is it's not deemed to be owed because it's not personal protective equipment. Non-slip, unless you're steel-toed or unless there's specific evidence of the ability or the potential for piercing, something that requires protections in the shoe above and beyond non-slip. Well, your argument is the definition of the shoe, not the preclusive effect, if any, of the federal regulation that's at issue here. Our argument is, if I can make it as succinctly as possible, is Federalist has an absolute right to control personal protective equipment. In this case, the non-slip shoes are by definition, and it's undisputed here, are not personal protective equipment. As such, does your opposition concede that? The opposition, and again, casting no aspersions, within the motion for summary judgment, they state, they provide a declaration of their own PMK saying, these shoes are not personal protective equipment. For the first time within the opposition to our appellate briefs, they now argue that I believe it's, I don't want to quote, but they fit, they conform to the definitions. But again, and I think that's why your Honor may have been asking the question, if you're looking at what you review, you would be reviewing what's before the district court. And there was never any evidence that these shoes are anything but something outside of the purview of personal protective equipment. So I think your theory is that if these, under California law, if, for example, these shoes had to wear, had to bear a Denny's logo on the toe, shall we say, then it would be a business expense that the company had to pay for. Clearly, even if they were not protective shoes, or were, were not, they would still have to pay for them, right? In some senses, your Honor, and if I can do it in six seconds, if I can get up on my, oh, I'm sorry, did I? Well, then, but I mean, the question is that these shoes, I mean, I think it's really a question of California law, would these shoes be required to be paid for under this section 2802? And that's what we would look at, and this isn't one of those Hawaiian shirt issues, your Honor. I think that the crucial thing is, and I am getting up on my tree stump at this point, are these are lesser paid employees. It's undisputed. Right. Many of the people that are impacted by this policy are minimum wage employees. Where you are required to purchase these shoes, 50, 60 bucks, twice a year, for no reason other than to benefit Denny's because they get an insurance policy out of it, it makes it a unique case. So that's why you say that they have to be paid for, because they have to do it twice a year. That's an important part of it, your Honor, but I do say, we do say that if you take the Fed OSHA out of it, there's law as cited within our briefs that say California OSHA says everything has to be paid for. And if you're looking at just California law, there is, forgive me, I can't cite it to you specifically, but it's within our papers, that says if Fed OSHA says no, but California specifically says yes. Very briefly, Denny's made a good point stating that there was an amendment considered by the legislature that was withdrawn. That doesn't mean that they rejected it. They said that was for the purposes of providing clarity. It's above and beyond the PPE in the state of California. I'm at three. You want to save the balance of your time for one more? Thank you, Your Honor. Okay, very good. Let's hear from the counsel for Denny's. May it please the Court, Nancy Pritikin, appearing for Appellee Denny's. Let me start off, unless there's something else you want me to start with, but let me start with what was raised by your Honors, which was the personal protective equipment. And I think there's a misunderstanding about that term. So personal protective equipment is a term of art that OSHA uses in enacting regulations. What an employer calls PPE, or personal protective equipment, is not dispositive, because an employer could say, I'm not going to put some equipment as a personal protective equipment, but that does not make it not personal protective equipment. Because if OSHA regulates it and tells who has to pay for that, that's what personal protective equipment is. Is there a conflict between what Denny's calls the shoes and what OSHA says is a PPE in this case? Well, I think that OSHA is very clear that the safety shoes we're talking about are personal protective equipment. Okay, so you say they clearly fit under the OSHA definition. What does Denny's call them? All right, so here's where the confusion, I guess, occurs, which is Denny's has a specific policy called personal protective equipment. It doesn't say this is all the personal protective equipment in the world. It lists specific personal protective equipment, and it lists it in connection with very specific tasks. So, for example, someone who's cutting has to use cutting gloves. Someone who's using caustic chemicals for cleaning has to wear a respirator or a mask or an apron. Those are all provided by Denny's. And the shoes are not in that list, is that right? The shoes are not in that list because the shoes are in a separate policy called safety shoes. Those safety shoes do not somehow not become personal protective equipment as defined by OSHA, just because they're not in the list of this PPE, which is very specific to particular tasks. And I think that you have to look at the regulations, and the regulations that OSHA issued specifically deal with personal protective equipment and deals in detail with shoes. So the fact that an employer may, even if Denny's somehow had a policy that said safety shoes are not personal protective equipment, that doesn't transform what the law says in terms of the definition of personal protective equipment as defined by OSHA. But it seems to me that your opposition suggests OSHA does not control here, that, in fact, it's CalOSHA which controls, and either CalOSHA or Section 2802. So I think that perhaps our papers were not clear. Our position is that the federal regulations under CalOSHA, the 2007 regulations followed by the 2011 SHU directive, specifically govern all of this issue. And what it says is employers are not required to pay for these kinds of safety shoes. Cal, the Cal, sorry. And you're suggesting that's the federal law? That's the federal law. That's correct. Right. So the way Congress set up the federal law was to say to the states, okay, you can come up with a plan if you want to do something different than what the federal courts have done, but you have to follow this particular process. And they outlined what that process is. You have to have a plan. It has to be approved by the federal OSHA. So California established the Occupational Safety Standards Board, and they, in 2011, said, you know what, we really want to talk about this SHU issue. So we're going to issue our own regulations. We're going to hold some hearings and look at this issue. And we're going to propose something that maybe requires employers to pay for that. And before it went to the next step, which was to go to the federal agency, they withdrew it. So they knew they could do it, but they withdrew it. And then if you look at Wage Order 5, which is the wage order that controls the restaurant industry, the wage order, the legislature made very clear, was not going to cover things that are regulated by the Occupational Safety Standards Board in California. And where they're not regulating it, obviously you have to look to the federal law. So that's our argument, is that it's federally preempted. California could have issued some regulations through the Standards Board to modify those. They didn't. So to the extent 2802 could be read as somehow changing that, it can't because it's preempted. Because there's no plan. That's right. But 2802 doesn't address safety issues. It just addresses what the employer has to pay for as a business expense, doesn't it? No, 2802, to the extent that it is going to undo or change what the federal OSHA standards are, or the state standards, if they go through the process and change those standards, it can't do it. Because we're talking about safety that's preempted and regulated under GAID and industrial trucking by these regulations. Well, that was the point I was making about putting the Denny's logo on. As I understand the business expense law, you can't wear those shoes outside the workplace. So that would be a business expense the company had to pay for, even though they're not under OSHA or they are or they are not. Either way, they would be. Well, the second part of the argument is that under California law, setting aside all the regulations and all of the occupational safety issues, these shoes are not a uniform. And Wage Order 5 is very clear that if it's not a uniform, the employer doesn't have to pay for it. So 2802 wouldn't be implicated in any event. So, I mean, this court... What about the coercion issue that your opposition raised when I asked him the question? Well, the coercion issue is an interesting one because this case is being brought by a manager. And this case is being brought by a manager who has no evidence that he himself was actually coerced. And, in fact, he's the one who entered everything into the computer. He's the one who ordered the shoes. And he's the one who never checked on any other employee's shoes. Nobody checked on his shoes. There was no threat of termination. And the policy itself says very clearly it's voluntary. So, I mean, it's nothing more than if an employer recommends a particular health plan that's going to lower everybody's costs because more people are going to participate in it. It doesn't make it coercion within the meaning of that term under the labor code, especially because of the plaintiff. In terms of the meaning of the term coercion, your opposing counsel suggests that we should recur to a dictionary to define coercion. Do you agree with that? Well, I don't think you... I think the law is well established on what is coercion. Coercion is not a suggestion. It's not a push. It is something more. It is a threat. It is something that compels your cooperation because there's going to be a very serious consequence. Where do you get that definition? Well, I get that definition from the way in which coercion is looked at in the criminal context and also the way, if you look at contract law, on what is coercion, what is duress. Can you cite a case or statute that would give us some guidance on that? I don't have one right in front of me. I would be more than happy and would welcome the opportunity if we could submit a letter. Well, didn't you cite Harris v. Vector Manual of Marketing, which is one of the district courts in Northern California, as well as Cal State Restaurant Association v. Whitlow, which is the Cal Reporter 129824? Yes, Your Honor. Thank you very much. Those were the cases. I guess I'm trying again to understand your argument, and maybe I just didn't understand your briefs. It was my understanding that you were suggesting that a Cal OSHA could, if you will, be a law that could, if you will, apply the law that OSHA has not necessarily applied. And so they could maybe fit into the strictures of OSHA as long as it didn't interfere with what OSHA did. And I guess I'm getting a different argument from you today. Well, I apologize to the extent that our briefs weren't clear, but what our argument is is that the federal law preempts and the federal law is clear. Well, I understand. The states are given the ability to modify and change what the federal OSHA decides, but they have to go through this process. And the only body that can do that is the Occupational Safety and Health Standards Board. Well, I understand that you argued that kind of a thing is related to 2802, but I wasn't sure that you made that same argument as regards their 6401 and title regs, title 8, section 3385 argument. So 6401, let me just address that to make clear what our position is on that, is that the 6401 is preempted to the extent that it requires anything different than what the federal OSHA has determined, it's preempted. And then if you look at it separate and apart from the preemption issue, under California law there are California regulations that say employers have to pay for this, but they don't have to pay for that. So if 6401 was this overarching statute that said everything gets paid for, then you wouldn't have California regulations that specifically address who pays for certain kinds of safety equipment. Well, and it seems to me that looking at 6401 and, if you will, section 3385 of title 8 and the regs under it, they do require that the employer provide steel shoes for the employees and even in a foundry, but we haven't got a foundry here. So I'm looking for another explanation, if you will. And so I guess I didn't see the preemption argument in your briefs, and so I was trying to evaluate even if not preempted. I guess I've got to review that preemption argument. Well, and I think the question on whether or not steel-toed boots that the federal OSHA has said are not, for example, if that says it's not paid for by the employer, and California has a regulation that says it is paid for by the employer, that may very well be, and I haven't looked at it, part of the plan that got submitted to OSHA and approved. If it didn't, it would be preempted. All right. Is this policy 60505, the one about the shoes, is that distributed to employees? Yes, it's in the handbook and it's available to employees. And the fact that the plaintiff in this case, the appellant, as a manager, didn't read those or says he didn't read it and didn't know what it said, he's charged with knowing it and having it available to him. It's very clear that it's a voluntary program. And as I understand, as it relates to the compulsion or coercion, the argument is that Cal State Restaurant Association, which is California law, which I take a little higher as authority than I do the federal district court's authority out of Harris, suggests that what compulsion or coercion is, and then even if, that if you look at the Black's Law Dictionary on coercion, that is a definition. And then I have to look at the facts and determine if they really meet that standard. Is that your argument? Yes, Your Honor. The only thing we really haven't talked about here is the 221 claim, but he didn't argue it. So I'm not going to say much more. Well, and you know, in the most tech-sophisticated state in the nation of California, to suggest that somehow electronic signatures are not a valid signature for purposes of any of these statutes, I mean, it flies in the face of the Electronic Communications Act and the rest of the laws on giving authorization. And certainly because this particular employee manager entered it into the computer himself, put in his unique employee identifier, I mean, there's no question that he was not somebody subject to some secret unanticipated deduction. Let me ask you, you heard counsel making some argument about how there was a change in midstream about your argument here. Do you want to respond to that? Because that's of some concern to me. Well, you know, again, I think that there is a particular policy that the company has called PPE, and personal protective equipment, that lists specific things that fall into these categories. So what our paper said is that's what the company called personal protective equipment. So shoes are not in that list. But that is not dispositive of the law and of what OSHA regulates, because otherwise employers could just categorize something as not personal protective equipment, for example, respirators. I kind of heard that argument, but he's suggesting it's new here. I don't think it's new. I think that we weren't focused on this issue because I didn't expect that there would be an argument that we saw in the appellate papers, which is that we're conceding that this couldn't possibly be, under the law, personal protective equipment, notwithstanding the fact that OSHA has a regulation called, you know, I mean, has a directive called shoe directive that specifically deals with these shoes as part of personal protective equipment. So to the extent that... You don't need to define it. Is your position that they are or they are not? They are, because they're governed by the OSHA regulations. OSHA would not have regulated it, would not have held months of hearings, would not have received comment to come up with these issues if it was not something safety-related. And non-slip shoes is personal protective equipment because it keeps people from getting hurt. Any other questions, either of my colleagues? I just had one. Okay, go ahead. One more, if I may. Please. Do you have an explanation for what the judgment, the district judgment, when he wrote that the deductions would be unanticipated? Does the statute require that deductions be, quote, unanticipated or undetermined? I think what Judge Benchavango was talking about there was that even if somehow you could construe these facts as showing some kind of coercion, the purpose of the statute is to prevent people from being surprised by unanticipated deductions and that this particular manager plaintiff could not have been surprised, that it was not something, because the policy behind the statute is to prevent that from happening. But it isn't in any law that you know of. Well, I think it's underlying the statute, and it is in, you know, the cases discuss the issue of having people suddenly have some deduction on their paycheck they're not anticipating and that this is designed to address that kind of issue. Any other questions, colleagues? Thank you very much. We'll hear a rebuttal. Initially, I believe a very important point. You heard twice from counsel that the record, their papers were not clear. I would like to point out several or a couple of errors I believe were made, factual mistakes. Your Honor, the OSHA regulations are not set within the handbook. The argument currently made less than two minutes ago before, Your Honors, that these shoes are now PPE by Denny standards is absolutely contrary to what they argued before the district court. And, Your Honor, it goes to your initial question. Should you guys have to try this all over again? No. It should go down to the court for clarity and let the district court re-argue it. With respect, Your Honor, to the- Well, I guess that was going to be my question. If, in fact, in this record we have what the regulations are under OSHA, and if, in fact, we have the opportunity to then interpret those regulations as preemptive or not, is that a factual question the district court's got to determine? It is something certainly within your right, but- I mean, it seems to me it's a legal question. Whether the regulations are preemptive or not, I've never seen, I've never quite seen a jury determine that. So while I understand your issue and I understand what you've argued, that's why I put it directly to her what it was that changed. I wanted to know that and I want to know it from you because then I'm forced with the idea, is this really something I need to send back or is this something I can determine on my own as a question of law? There's no sense having the district court determine a question of law. Well, there is, Your Honor, when the law as defined is in some sense subjective here. What is and was not, not everything is, just because it has some safety aspect to it, not everything is safety equipment or personal protective equipment. Just like under 2802, not everything that is reimbursable is a safety equipment. The cases in front of- Well, Hunter, I don't think 2802 really comes into it unless, in fact, we've got an OSHA preemption and California didn't have a plan. And it doesn't seem to me there's any evidence California had the plan, so unless there's a preemption, 2802 can be interpreted. I'd slightly disagree, Your Honor, at page 15 and 16 of our reply. We show to the court that California does have a plan, not respecting the amendment. What, again, what you'd read on our papers, and I do want to address the 221 if you can give me 30 seconds, but to answer your question, Your Honor, on pages 15 and 16 of our reply, you see case law saying this amendment really does nothing but adds clarity. The employer has always had the obligation under California law to reimburse these employees. And, again, right or wrong, the state of California protects its employees, especially its low-wage earners, and there's a reason for it. Very quickly, and I'm sorry I'm going too fast, on the 221, Your Honor- There is no too fast. Go for it. On the 221, I appreciate that. On the 221, it's a crucial issue, Your Honor. What you're dealing with here is, and there's another error made by Denny's, there's nothing in front of the district court and there's nothing in front of Your Honors that shows that there's a unique identifier. The Ninth Circuit has come down in the last four months on two cases on e-signatures. And I would put it to Your Honor, Your Honor, you've got a computer on your desk. If you guys suddenly excused yourself for five minutes and I was able to get up there and mark, which is all Mr. Lemus did, mark an X, I think it would be horrifying if you were subscribed to something I did. That's the potential here. There isn't a signature. Counsel, with respect, anything is possible, but you agree that under both federal and state law that electronic signatures are all quite common now and authorized. Is it your contention that in this case that your client was somehow defrauded, deprived, or otherwise mistreated by virtue of an unauthorized electronic signature? Very quickly, two points. Our contention is that there are multiple purchases made here that's undisputed. And my client did testify that on many occasions it wasn't his checkmark. He's a primarily Spanish speaker. He doesn't know how to use the computers. I know lots of Spanish speakers who can use computers. And no deference. The majority of my clients are Spanish speakers. What he was saying is because it wasn't in English and I'm a primarily Spanish speaker, I couldn't use it. But more importantly, Your Honor, the legal aspect, which was defined twice by the Ninth Circuit less than five months ago, is that if you're going to go e-signature, you need to have a prior written agreement which fully explains this. And that addresses what Your Honor is alluding to and what I'm referencing. If Denny's went to my client and said, hey, look, in the future you're going to mark this box and that's your signature, that's fine. But where we have an absence of that, you cannot defend on the e-signature act. And that's the Ruiz case, December 2014, before the 9th. And I think it's a case called JBB. But, Your Honor, they've got very specific elements. It would be an affirmative defense on Denny's behalf. Again, I have no problem with defending that, but I don't think it should be done, at least that issue, Your Honor, in front of Your Honors. That's the reason for a district court judge. Any other questions from my colleagues? Thank you very much. I appreciate going slightly over. Thanks to both counsel for your arguments. Very helpful.
judges: Lefkow, Smith, Smith